# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE CABALLERO LUNA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION CENTER, et al.,<br><br>Respondents. | Case No. 1:26-cv-04610-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING<br><br>ORDER DENYING PETITIONER'S MOTIONS FOR APPOINTMENT OF COUNSEL<br><br>(ECF Nos. 7, 11) |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who was paroled into the United States on or about June 29, 1994. On June 11, 1997, Petitioner's Form I-485 application was granted and his status was adjusted to that of a lawful permanent resident. (ECF No. 6-1 at 2; ECF No. 6-2 at 1.[1]) On February 15, 2002, Petitioner was convicted of trafficking cocaine, in violation of Florida Statute section 893.135(1)(b)(1)(c), and was sentenced to an imprisonment term of three years. (ECF No. 6-1 at 3; ECF No. 6-2 at 1.) On August 27, 2025, Petitioner was arrested for conspiracy to

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

traffic cocaine, in violation of Florida Statute section 93.135.5. (ECF No. 6-1 at 3.) On September 3, 2025, immigration authorities encountered Petitioner while he was jailed following his most recent arrest. (Id. at 2.) On September 14, 2025, the Department of Homeland Security issued a notice to appear, charging Petitioner with removability under 8 U.S.C. § 1227(a)(2)(B)(i) and § 1227(a)(2)(A)(iii). (ECF No. 6-2 at 1.) Petitioner's immigration proceedings are ongoing.

On June 15, 2026, Petitioner filed a petition for writ of habeas corpus challenging his immigration detention. (ECF No. 1.) On June 22, 2026, Respondents filed a response. (ECF No. 6.) On July 17, 2026, Petitioner filed a traverse. (ECF No. 12.)

## II.

## DISCUSSION

### A. Overview of Caselaw Regarding Immigration Detention Statutes

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Avilez, 69 F.4th at 529 (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to

certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that

is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[3] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

---

[2] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[3] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

///

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

**B. Procedural Due Process**

Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B). Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

///

Based on the foregoing, the Court recommends finding that unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) without an individualized bond hearing violates due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). Here, there is no information before this Court regarding the likely duration of future detention and the delays in the removal proceedings caused by Petitioner and the government. Accordingly, the Court will apply the three-part test set forth in Mathews v. Eldridge. See Rodriguez Diaz, 53 F.4th at 1193, 1206 ("assum[ing] without deciding," in context of petitioner detained under to 8 U.S.C.

§ 1226(a) seeking a second bond hearing, that Mathews test applied, noting the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); id. at 1219 (Wardlaw, J., dissenting) ("agree[ing] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation").

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

"As a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011). Here, Petitioner has been detained for approximately twelve months. It "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). Petitioner "has a legitimate and reasonably strong private liberty interest under *Mathews*." Rodriguez Diaz, 53 F.4th at 1207. Accordingly, the Court finds the first Mathews factor weighs in favor of Petitioner.

2. Risk of Erroneous Deprivation

"Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody

redetermination hearing.'" Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)).

3. Government Interest

"[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). "These are interests of the highest order that only increase with the passage of time." Rodriguez Diaz, 53 F.4th at 1208. "The government interest in immigration enforcement in general is surely substantial. But the question here is not the government's interest in immigration enforcement [in general] but its interest in" detaining Petitioner without providing her with a bond hearing. Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (The "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020); Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). The Court finds the third Mathews factor weighs in favor of Petitioner.

Based on the foregoing, the Court recommends finding that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing.

**C. Remedy**

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Doe v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts

throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods”))); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) (“The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner’s eligibility for release on bond and/or placement in a supervised release program[.]”).

The Court further finds that “the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond” and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that “the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community” with respect to a bond hearing ordered pursuant to the Due Process Clause). In the event Petitioner is “determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,” the immigration judge should consider Petitioner’s financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court “correctly directed the immigration judge (“IJ”), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.”).

**D. Motions for Appointment of Counsel**

Petitioner has moved for appointment of counsel. (ECF Nos. 7, 11.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, the Criminal Justice Act authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if “the interests of justice so require.” 18 U.S.C. § 3006A(a)(2)(B). To determine whether to appoint counsel, the “court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.” Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). In light of the Court’s recommendation that the petition be granted, the

Court will deny Petitioner's motion for appointment of counsel.

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the construed prolonged detention due process claim.
2. Respondents be ordered to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

Further, Petitioner's motions for appointment of counsel (ECF Nos. 7, 11) are DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

///

///

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 21, 2026**

STANLEY A. BOONE
United States Magistrate Judge